Filed 2/11/21  Liu v. Wang CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LONG Z. LIU,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>TOMMY SONGFONG WANG et al.,<br><br>　　Defendants and Appellants. | B303323<br>(Los Angeles County<br> Super. Ct. No. 19PSCV00860) |

APPEAL from an order of the Superior Court of Los Angeles County, Gloria White-Brown, Judge.  Reversed and remanded.

Law Offices of James I. Ham and James I. Ham; Licensed to Sue and Walter Whitman Moore for Defendants and Appellants Tommy Songfong Wang and Wang IP Law Group.

Shyn & Associates and Casio Shyn; Liu Law, Inc., and Abraham S. Odabachian for Plaintiff and Respondent.


Defendants appeal from an order denying their special motion to strike plaintiff's complaint under Code of Civil Procedure section

425.16, the anti-SLAPP statute.[1]  The trial court denied the anti-SLAPP motion under the first step of the statutory analysis on the ground that, because defendants' settlement demand letter constituted extortion as a matter of law, plaintiff's claims did not arise from constitutionally protected speech or activities under section 425.16.  We reverse.

## FACTUAL BACKGROUND

Our factual statement is drawn from the complaint, declarations and other evidence submitted in connection with the anti-SLAPP motion.

In November 2017, plaintiff and respondent Long Z. Liu (Liu) began representing Malinzhu Jia (Jia) in several separate but related litigation matters regarding substantial investments Jia had made in various entities, and in connection with several matters involving federal law enforcement agencies.  Between May 20 and August 30, 2019, Liu was substituted out on all matters and replaced by defendants and appellants Tommy Songfong Wang and Wang IP Law Group (collectively, Wang).  By the end of August 2019 all of Jia's litigation matters were settled and dismissed.

On September 9, 2019, Liu transferred to Wang three boxes containing his files in connection with his representation of Jia.

---

[1]     SLAPP is the acronym for strategic lawsuit against public participation.  (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 939 (*Sweetwater*).)  All further statutory references are to the Code of Civil Procedure unless otherwise noted.

On September 12, 2019, Wang sent Liu a nine-page letter informing him of Jia's concern that Liu had billed an excessive amount of attorney fees and expenses in the course of his representation. Pertinent portions of the letter state: "Please be advised that [Jia] has requested [Wang] to review [Liu's] billing out of concern that over $350,000.00 in attorney's fees was charged for a case that never got further than an initial demurrer. Upon review of [Liu's] billing records, there are several discrepancies, including but not limited to the following."

The first eight pages of Wang's letter categorize and identify what Wang characterized as a non-exhaustive list of over $247,000 of excessive and unnecessary fees and expenses charged to Jia.[2] The letter concludes:

> "While our Client is entitled to much more, without wasting more time and resources and in the interest of resolving this matter amicably, our Client is willing to accept a return of **$300,000.00** of the inflated fees she was billed for by [Liu's] firm. Our Client looks forward to receiving the requested refund no later than **Monday, September 23, 2019**.
>
> "Should you fail to remit the requested refund to our Client, our Client *will be forced to seek the assistance of the California State Bar* to recover all fees and costs incurred.
>
> "The foregoing is written for purposes of compromise and settlement and is covered under California Rules of Evidence. . . .
>
> "We look forward to receiving the requested refund in a timely manner. Should you wish to discuss this matter further,

---

[2]     Although the letter initially refers to a single "case that never got further than an initial demurrer," it details purported overcharges and excessive costs by Liu in connection with his representation of Jia in three litigation matters and communications with several federal agencies.

you may reach me at [Wang's phone number and email address]." (Italics added.)

The letter, which was copied to Jia, contained no attachments. Later that day Jia sent Liu an email stating, "My attorney is looking forward to hearing back from you."

## PROCEDURAL BACKGROUND

On September 25, 2019, Liu sued Wang, alleging two causes of action for civil extortion and unfair competition (in violation of Bus. & Prof. Code, § 17200, et seq.) based on the demand letter.

The cause of action for extortion alleges, in part, that Wang's "demand letter . . . threatened, explicitly or implicitly, to utilize the disciplinary action by the State Bar of California unless $300,000 was remitted" by September 23, 2019. The complaint further alleged that Wang's intentional conduct violated California Rules of Professional Conduct, rule 3.10 (rule 3.10), which prohibits an attorney from "threaten[ing] . . . administrative, or disciplinary charges to obtain an advantage in a civil dispute. [¶] . . . [¶] . . . whether or not an action has been commenced." (Rule 3.10(a) & (c).) According to Liu, "[t]he totality of [Wang's] conduct, including the written explicit and implicit threats of California State Bar disciplinary complaint against" Liu unless he paid the demand constituted civil extortion. Liu claimed to have suffered damages as a result of at least $300,000 as a result of the extortion.

4

The second cause of action alleged that Wang's conduct constituted an unlawful business activity or practice "forbidden" by several provisions of the Penal Code regarding criminal extortion, rule 3.10 and Business and Professions Code section 17200, et seq., because Liu had committed "extortion in the form of demanding money and/or property and threatening disgrace to [Liu] in the form of a California State Bar complaint." In addition to monetary damages of at least $300,000, punitive damages, injunctive relief and attorney fees, Liu prayed for Wang to be required to disgorge "all ill-gotten gains."

Wang moved to strike Liu's complaint as a SLAPP suit, arguing the complaint should be stricken in its entirety because it arose from Wang's exercise of constitutionally protected rights of speech or activity. (§ 425.16, subd. (e).) Wang also filed a request for judicial notice of six California State Bar publications regarding arbitration of fee disputes.[3]

Wang argued the demand letter was protected activity under section 425.16 in that it did not mention, let alone threaten, disciplinary action against Liu. Rather, the letter was merely a settlement demand sent on behalf of Liu's former client in connection with an attorney fees dispute, and the client had the right to insist the fee dispute be resolved through the state bar's Mandatory Fee Arbitration Program. Wang also

---

[3]     Those documents, published on the California State Bar website, are entitled: (1) "Mandatory Fee Arbitration Program," (2) "Fee Disputes," (3) "Request for Arbitration of a Fee Dispute," (4) "Instructions and Information for Requesting Fee Arbitration," (5) "Having a Fee Dispute with Your Lawyer?," and (6) "What Can the Mandatory Fee Arbitration Program Do for Me?"

5

argued Liu could not satisfy his burden to show a probability of success on the merits because the letter was not a threat of disciplinary action, his conduct fell within the litigation privilege (Civ. Code, § 47), and Liu had failed to plead and could not prove an entitlement to monetary or other relief.

In opposition, Liu argued that Wang could not satisfy his initial burden under the anti-SLAPP analysis because the demand letter constituted extortion as a matter of law, and Wang's conduct did not fall within any category of protected activity under section 425.16, subdivision (e). In a declaration submitted in support of the opposition, Liu noted that Wang's letter did not state that Jia was contemplating initiating state bar arbitration, and that no arbitration, litigation or other action had been filed against Liu. Liu declared that Wang had made an "illegal" threat of extortion, which bore no "no connection to a fee dispute between [Liu] and [his former] client," nor any "'connection or logical relation' to a contemplated action for litigation and was not made 'to achieve the objects' of litigation," and that his "lawsuit [did] not involve any issues relating to a fee dispute with [his] past clients." Liu also claimed that, even if Wang could show its claims arose from protected activity, Liu could demonstrate a probability of prevailing on his claim of extortion. Liu claimed to have suffered psychological injury in that Wang's letter threatened to "disgrace [him] by filing a state bar complaint" unless he met Wang's demand.

After issuing a tentative ruling, the trial court heard oral argument and took the matter under submission. On December 30,

6

2019, the court granted Wang's request for judicial notice and adopted its tentative ruling.  The trial court denied the anti-SLAPP motion at the first step of the section 425.16 analysis on the ground that Wang's letter "constitute[d] extortion as a matter of law."

Wang timely appealed from the order denying its special motion to strike.

## DISCUSSION

We conclude that the trial court erred in denying the anti-SLAPP motion.  Wang made a sufficient threshold showing that its conduct arose from protected activity.  Further, although the trial court failed to conduct the second prong of the anti-SLAPP analysis, we conclude, based on the appellate record that Liu cannot demonstrate a probability of prevailing on his claims.

### I. *The Anti-SLAPP Statute and Standard of Review*

A SLAPP suit is a meritless lawsuit brought primarily to inhibit or punish the exercise of the constitutional right of petition or free speech.  (§ 425.16, subd. (a); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 60.)  The purpose of the anti-SLAPP statute is to weed out meritless claims arising from protected activity early in litigation.  To that end, the Legislature has declared that the statute "shall be construed broadly."  (*Central Valley Hospitalists v. Dignity Health* (2018) 19 Cal.App.5th 203, 216; § 425.16, subd. (a).)

7

Analysis of an anti-SLAPP motion is two-fold. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).) First, the trial court determines whether the moving party (typically, the defendant) has made a threshold showing that the challenged claims arose from a protected activity. (§ 425.16, subd. (b)(1).) If the movant makes this threshold showing, the burden shifts to the opposing party to demonstrate a probability of prevailing on the claims. (*Ibid.*) If the defendant fails to meet its burden on the first step, the trial court should deny the motion; it need not proceed to the next step to evaluate the merits. (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1162.) "A cause of action is subject to dismissal under the statute only if both steps of the anti-SLAPP analysis are met." (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1293 (*Malin*); *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278–279.) The "focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 (*Navellier*).)

"In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79; *Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 312.) The trial court must look beyond plaintiff's characterization of defendant's conduct to determine, based on competent evidence, whether the plaintiff's claims arise from

8

protected speech or conduct. (See *Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679 [the court does "not evaluate the first prong of the anti-SLAPP test solely through the lens of a plaintiff's cause of action"].)

A trial court's ruling granting or denying the anti-SLAPP motion is reviewed de novo. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

## II. *Wang Satisfied its Burden to Show that Liu's Claims Arose from Protected Activity*

To satisfy its burden on the first prong of the anti-SLAPP statute, Wang must make a prima facie showing that Liu's claims "arose from" an act performed in furtherance of Wang's right of petition or free speech. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063 [a claim is the "activity allegedly giving rise to liability"].) Wang is not required to prove its conduct is constitutionally protected as a matter of law. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 319 (*Flatley*).) The question is only whether Wang made a prima facie showing that the activity underlying the claims alleged against it is statutorily protected. (*Wilson, supra,* 7 Cal.5th at p. 888.) In determining whether the claims arise from protected activity, the trial court does not consider the legitimacy of plaintiff's claims. (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388 ["Arguments about the merits of the claims are irrelevant to the first

9

step of the anti-SLAPP analysis"]; see *Malin, supra,* 217 Cal.App.4th at p. 1304.)

The categories of "protected activity" under section 425.16 pertinent here encompass "any written or oral statement or writing made before a . . . judicial proceeding, or any other official proceeding authorized by law," and "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law." (§ 425.16, subds. (e)(1) and (e)(2).) These categories include statements in the course of pending litigation, and some prelitigation statements, i.e., "'communications preparatory to or in anticipation of the bringing of an action . . . .' [Citations.]" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs*); *Malin, supra,* 217 Cal.App.4th at p. 1293 ["Ordinarily, a demand letter sent in anticipation of litigation is a legitimate speech or petitioning activity that is protected under section 425.16"].) A prelitigation statement constitutes protected activity for anti-SLAPP purposes if it "'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration"'" [citation]." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268; *People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824 [court's focus is whether litigation was genuinely contemplated; "hollow threats of litigation are not protected"].)

Wang maintains the trial court erred in finding the demand letter constitutes "extortion as a matter of law" because it implicitly threatens

10

Liu "with disciplinary action by the State Bar unless [Liu] remits" $300,000 to Jia by a date certain. Wang asserts the letter does not mention, let alone threaten, any disciplinary action. We agree.

In the first prong analysis, we do not consider the merits of Liu's disputed claims. At the initial stage the focus is on whether the conduct at issue arose from defendant's protected petitioning or free speech activities. (*Navellier, supra,* 29 Cal.4th at pp. 94–95.) The defendant need show only the existence of a legitimate issue as to whether the speech or petition activity is constitutionally protected. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 828; *Flatley, supra,* 39 Cal.4th at pp. 311–320; see *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 195, disapproved on another ground by *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396, fn. 11 (*Baral*) ["[c]ase after case makes clear that the validity of the speech or petitioning activity is ordinarily not a consideration in analyzing the 'arising from' prong"].) Conduct must be illegal as a matter of law to defeat a defendant's showing of protected activity at this stage. (*Flatley, supra,* 39 Cal.4th at pp. 316–318.) "The defendant must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to defeat an anti-SLAPP motion at the first step." (*City of Montebello v. Vasquez* (2016) 1 Cal. 5th 409, 424 (*City of Montebello*); *Flatley*, at pp. 316–318, 320.)

Here, Wang did not concede, nor does the evidence conclusively establish, that its conduct was illegal.[4]  The trial court rejected Wang's contention that the letter referred to "the initiation of State Bar sponsored fee arbitration," because the letter does not "contain[] the term 'fee arbitration' nor does it include any attachments regarding fee arbitration."  The court then imported a contractual analysis to construe the letter's "ambiguity . . .  against [Wang]" and conclude the letter "constitutes a threat of imputing to [Liu] a 'disgrace.'"  But this analysis strays from the required examination whether the letter, as a factual matter and without interpretation of any ambiguity, was illegal as a matter of law.

Wang's letter threatens only that, if Liu failed to remit the requested refund, his former client (Jia) would "be forced to seek the assistance of the California State Bar."  True, the letter does not explicitly state Jia intended to initiate mandatory fee arbitration through the State Bar if Liu failed to comply with the demand.  However, the letter also contains no explicit or implicit threat that Jia planned to initiate disciplinary action against Liu by filing a State Bar "complaint" if he failed to satisfy the settlement demand.  To the extent

---

[4]     *Flatley* established "an important exception to the protections established by the statutory categories set out in section 425.16, subdivision (e)." (*City of Montebello, supra*, 1 Cal. 5th at p. 423.)  *Flatley* "held that 'section 425.16 cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition.'" (*City of Montebello,* at p. 423, citing *Flatley*, at p. 317.)  In *Flatley,* the court "emphasized that section 425.16 was expressly intended to protect *valid* speech and petitioning activity." (*City of Montebello,* at p. 423; see § 425.16, subd. (a).)

12

two inferences may reasonably be drawn from Wang's letter, the trial court was obligated to draw an inference in favor of Wang's contention that Jia contemplated seeking assistance from the State Bar's fee arbitration program, leaving for the second step the opportunity for Liu to show otherwise.

Where, as here, the evidence at the very least raises a dispute about "the legitimacy of the defendant's conduct, *it cannot be resolved within the first step* but must be raised by the plaintiff in connection with the plaintiff's [second step] burden to show a probability of prevailing on the merits." (*Flatley, supra*, 39 Cal.4th at p. 316, italics added; cf., *Douillard v. Smith* (1945) 70 Cal.App.2d 522, 527 [""'If there be two inferences equally reasonable and equally susceptible of being drawn from the proved facts, the one favoring fair dealing and the other favoring corrupt practice, it is the express duty of the court or jury to draw the inference favorable to fair dealing,'"" quoting *Ryder v. Bamberger* (1916) 172 Cal. 791, 799–800.)

Initiation of State Bar mandatory arbitration in an attorney fee dispute is a protected activity under the anti-SLAPP statute. Just as filing a lawsuit constitutes "petitioning" under section 425.16, "the initiation of a State Bar-sponsored fee arbitration proceeding is likewise covered; after all, it is an official proceeding established by statute to address a particular type of dispute." (*Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347, 358.) It necessarily follows that a settlement demand "threatening" such protected activity if certain conditions are not met, is similarly protected. (See *Crossroads*

13

*Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13
Cal.App.5th 757, 782 (*Crossroads*) ["Settlement discussions made in
connection with litigation are protected activity under the anti-SLAPP
statute"]; see also *Malin, supra*, 217 Cal.App.4th at p. 1293 [demand
letter sent in anticipation of litigation is a legitimate speech or
petitioning activity protected under the anti-SLAPP statute].)  It does it
matter that the settlement demand was sent by Wang, not Jia herself;
it is no less protected.  (See *Briggs, supra*, 19 Cal.4th at p. 1116
[§ 425.16 protects speech and petitioning activities undertaken on
another's behalf].)

Thus, the trial court should have proceeded to the second step of
the anti-SLAPP analysis.  (*Flatley, supra*, 39 Cal.4th at p. 316.)
"Although the trial court did not conduct a second step analysis, we
nevertheless 'can address that question as it is subject to independent
review.  [Citation.]'  [Citation.]" (*Malin, supra*, 217 Cal.App.4th at p.
1300; *Santa Clara Waste Water Co. v. County of Ventura Environmental
Health Division* (2017) 17 Cal.App.5th 1082, 1090–1091.)  And
"[b]ecause we can decide the question as a matter of law, it would be a
waste of  judicial resources to remand the matter to the trial court."
(*Santa Clara Waste Water Co.,* 17 Cal.App.5th at p. 1091.)

III.   *Liu Has Not Demonstrated a Probability He Will Prevail on the
       Merits*

Based on our independent review of the record, we conclude Liu
cannot satisfy his burden under the second step.

The second prong of the anti-SLAPP analysis requires the court to determine whether the plaintiff has shown, by admissible evidence, a probability of prevailing on the contested claim or claims. (§ 425.16, subd. (b).) The California Supreme Court has "described this second step as a 'summary-judgment-like procedure.' [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.' [Citation.]" (*Baral, supra,* 1 Cal.5th at pp. 384–385, fn. omitted.)

At "the second step inquiry, a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint . . . ; instead, its proof must be made upon competent admissible evidence.' [Citation.]" (*Sweetwater, supra,* 6 Cal.5th at p. 940.) To this end, a declaration submitted in opposition to an anti-SLAPP motion must rely on evidence admissible at trial. (See *id.* at p. 949.)

Liu cannot establish a probability of prevailing on his claims for civil extortion or unfair competition as he has not shown Wang made any illegal or improper "threat." Notwithstanding Liu's self-serving declaration to the contrary, the demand letter contains no such threat, nor does it imply that Jia would initiate a State Bar disciplinary action against Liu. The record contradicts Liu's claim that the letter bore no

15

relation to an attorney fees dispute. The demand letter begins by informing Liu that his former client is concerned she was overcharged "$350,000.00 in attorney's fees." For eight pages the letter goes on to identify "discrepancies" and purportedly excessive, unnecessary and improper charges gleaned from Liu's own billing records in Jia's matters. In conclusion, Wang opines that a more thorough review likely would reveal Jia was "entitled to much more," but had written the letter "for purposes of compromise and settlement" and to avoid "wasting more time and resources." Accordingly, "in the interest of resolving this matter amicably," Wang said Jia would "accept a return of **$300,000** of the inflated fees" billed by Liu. If Liu did not make a refund by a date certain, Wang stated Jia "[would] be forced *to seek the assistance of the California State Bar"* to recover disputed fees and other expenses. (Italics added.)

Liu's complaint alleges that Wang's "letter warned that if [Liu] failed to pay $300,000 by September 23, 2019, Jia would be **<u>forced</u>** to file a California State Bar complaint against [Liu]." The letter says nothing of the kind and does not threaten discipline or public disgrace. Rather, it is a written communication offering to settle a fee dispute, which explains to the attorney Jia's legitimate concerns about fees charged and the steps she intends to take if the settlement offer is rejected. Liu's allegations and self-serving characterization of the contents of the letter are not evidence, and he may not re-write the letter to suit his purposes.

16

The extortion claim also fails for the independent reason that Liu made no showing that Wang obtained property or other consideration as a result of sending the demand letter. "Extortion is the obtaining of property or other consideration from another, with his or her consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." (Pen. Code, § 518, subd. (a).) To prevail, a plaintiff must plead and prove he actually paid or gave something of value to the defendant; failure to do so is fatal to a claim of extortion. (*Fuhrman v. California Satellite Systems* (1986) 179 Cal.App.3d 408, 426, disapproved on another ground by *Silberg v. Anderson* (1990) 50 Cal.3d 205, 219 [affirming dismissal on demurrer of plaintiff's extortion claim based on two demand letters because plaintiff did not allege she had paid any of the money defendants demanded].) Here, Liu neither pled nor presented evidence he made any payment or other consideration to Jia or Wang. Nor did Liu show he suffered damage as a result of Wang's demand. Liu claimed to have suffered "psychological distress" as a result of the "threat," but offered no evidence to substantiate that claim.[5]

_____

[5] Liu submitted no evidence to support his declaration. Our review revealed two letters elsewhere in the record from two doctors from whom Liu claims to have received treatment. Those letters, however (each of which is dated approximately two months after Liu filed his complaint), were submitted as part of an unspecified portion of an attachment to the declaration filed by Liu's counsel in opposition to the anti-SLAPP motion. They appear in an exhibit containing documents Liu produced in discovery in connection with the anti-SLAPP motion. The first letter refers only to an evaluation and single treatment Liu received from a chiropractor on November 18, 2019. The second letter states only that it "services [*sic*] as a verification" that Liu had an initial consultation at a psychologist's office on

17

Moreover, Liu's statutory claim for unfair competition in violation of Business and Professions Code section 17200 also fails. "[T]he remedies available to private individuals for violation of the [§ 17200] are limited to restitution and injunctive relief; damages cannot be recovered." (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 609–610.) The record contains no evidence that Liu paid any of the demand, hence there is no basis for restitution. Neither is injunctive relief in order. Statutory claims of unfair competition are properly "directed at "'on-going wrongful business conduct'"'" and "envisions something more than a single transaction"; a complaint that fails to allege "ongoing conduct" does not state a cause of action under section 17200. (See *State of California ex rel. Van de Kamp v. Texaco, Inc.* (1988) 46 Cal.3d 1147, 1169–1170, superseded by statute on another ground as stated in *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 570–571.) To the extent Wang's letter may be characterized as ongoing business misconduct or a "transaction," the only damages Liu suffered are his unsubstantiated claims of mental distress. Even if Liu could quantify his injury, monetary damages are not available for a violations of section 17200.

Finally, the claims of extortion and unfair competition fail because the demand letter is protected by the litigation privilege. (Civ. Code, § 47, subd. (b) [a "privileged publication" is one made in the course of, among others, judicial or other official proceedings authorized by law];

November 18, 2019. Even if this weak evidence was admissible, neither letter substantiates Liu's claim to have suffered "psychological and mental distress *as a result of [Wang's] threat*." (Italics added.)

18

*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913 [the litigation privilege "'includes statements made to initiate official action'"].) The privilege is absolute and applies even if, as Liu alleges, a communication was made with an intent to harm. (*Wise v. Thrifty Payless, Inc.* (2000) 83 Cal.App.4th 1296, 1302; see *Malin, supra*, 217 Cal.App.4th at pp. 1294, 1302 [in which this court found the requirements for striking a claim for civil extortion based on a settlement demand letter under section 425.16 were satisfied because the letter was protected by litigation privilege; "a plaintiff cannot establish a probability of prevailing where the litigation privilege precludes liability"].) "Any doubt as to whether the privilege applies is resolved in favor of applying it." (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529.)

Here, Liu has not shown and cannot show that Wang's letter is anything other than what it purports to be, viz., a settlement demand sent on behalf of a client in contemplation of an official proceeding. Liu does not take issue with the letter's factual assertions, nor has he presented evidence that any instance of excessive billing itemized therein is unfounded. Again, at the second step of the anti-SLAPP analysis, a plaintiff attempting to prove the merits of his claim must do so with competent admissible evidence. (*Sweetwater, supra*, 6 Cal.5th at p. 940.) "'In the anti-SLAPP context, the litigation privilege presents "a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." [Citation.]'" (*Crossroads, supra,* 13 Cal.App.5th at p. 786 [with the sole exception for claims of malicious

19

prosecution, the litigation privilege provides a defendant complete immunity from virtually all tort liability, including claims of fraud].) Liu failed to overcome this defense.

For the reasons discussed above, the trial court should have granted Wang's anti-SLAPP motion.

## DISPOSITION

The order denying appellant's motion under Code of Civil Procedure section 425.16 is reversed. The matter is remanded to the trial court with instructions to enter an order granting appellants' anti-SLAPP motion and to dismiss the complaint. Wang shall recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

COLLINS, J.

20